O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JEFFERSON & CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF ASSESSMENT AND APPEALS NO. 3 FOR ORANGE COUNTY, STATE OF CALIFORNIA,<br><br>Defendant. | CASE NO. SACV09-849 DOC (RNBx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter came before the Court for a non-jury trial on September 13, 2010. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court hereby issues its findings of fact and conclusions of law.

**A.    Findings of Fact**

1.    On July 22, 2009, Plaintiff William Jefferson & Co., Inc. ("WJ") filed a Complaint against the Assessment Appeals Board for the County of Orange (erroneously sued as Board of Assessment and Appeals No. 3 for Orange County) ("Board") bringing two claims for (1) violations of 42 U.S.C. § 1983; and (2) constitutional violations.

(Docket 1.)

2. WJ alleged that the Board deprived it of its right to due process under the Fourteenth Amendment to the United States Constitution. *Id.*

3. WJ's claims arise out of its unsuccessful appeal of the Orange County Tax Assessor's base year value determination for certain real property located in Irvine, California. *Id.*

4. On July 15, 2008, WJ filed an Application for Changed Assessment as to the base year value of real property located at 15242 Normandie Ave., Irvine, California. *Id.*

5. In that application, filed with the Board, WJ requested written findings of fact. WJ paid the $320.00 filing fee that the Board charges applicants who request written findings of fact. That fee is associated with the resources expended by the Board in preparing written findings of fact.

6. After receiving WJ's application, the Board set an initial hearing for February 2, 2009. At the February 2, 2009 hearing, the parties submitted initial argument and agreed to conduct a further evidentiary hearing on March 31, 2009. Trial Tr., dated September 13, 2010, at 12:12-18.

7. The County Counsel's office for Orange County represented the Orange County Tax Assessor at both hearings before the Board. Mr. James C. Harmon ("Harmon"), Senior County Counsel, was the specific attorney assigned to represent the Tax Assessor. *Id.* at 19:2-7.

8. Another member of the County Counsel's office of Orange County, Ms. Paula Whaley ("Whaley"), Deputy County Counsel, assisted the Board. *Id.* at 9:18-25. Ms. Whaley purported to assist the Board pursuant to Government Code section 31000.7, which provides that the County Counsel's office "may represent the [county tax assessor] and the county board of equalization, as long as the same individual does not represent both parties." Cal. Gov't Code § 31000.7.

9. In order to ensure that attorneys who represent the Tax Assessor do not improperly

2

        and unethically interact with the attorneys who assist the Board, the County Counsel's office is divided into two sections: (a) an "advisory" section; and (b) a "litigation" section. *Id.* at 40:8-14. Between the advisory and litigation sections, the County Counsel's office is composed of approximately 65 attorneys, forty of whom are assigned to the litigation section and twenty-five of whom are assigned to the advisory section. *Id.* at 68-69.

10. Whaley joined the County Counsel's office in 2000 and was initially assigned to the mental health unit, which was considered part of the litigation section. *Id.* at 6-7. After a brief stint in the juvenile dependency and appeals unit, which is also part of the litigation section, Whaley was assigned to the advisory section, to which she has been continuously assigned since her transfer. *Id.*

11. Soon after being transferred from the litigation section to the advisory section, Whaley went through an orientation directed by her immediate supervisor. During this orientation, Whaley "review[ed] various materials such as the Assessment Appeals handbook, [and] the Revenue and Taxation Code." *Id.* at 8:12-22. Whaley also reviewed "prior findings of fact that were written by others in [the] office." *Id.*

12. In 2009, the Clerk of the Board contacted the County Counsel's office to request that a member of the advisory section assist the Board in connection with WJ's appeal of the Tax Assessor's base year value determination. *Id.* at 10-12. At the time the WJ appeal was filed, the advisory section was composed of Whaley and another attorney named Dan Torres, who alternated "on-call" days on which each would request to any request from the Board for assistance. *Id.* at 11:19-12:2.

13. Ms. Whaley attended both the February 2, 2009 and March 31, 2009 hearings before the Board. *See id.* at 12:12-18. Prior to the March 31, 2009 hearing, Whaley reviewed the briefs filed by the two parties to the appeal — WJ and the Tax Assessor. *Id.* at 14:9-11. A panel of three Board members adjudicated WJ's appeal. *See id.* at 16:2-3.

14. At the March 31, 2009 hearing, Whaley took notes, retired with the Board to observe the Board's deliberations following the proceedings, provided the Board with advice about the applicable law, and ultimately drafted the written findings of fact that disposed of the case. *Id.* at 16:13-20. The Board members provided Whaley with specific direction on the content of the written findings of fact. *Id.* at 17:12-15. Whaley did not have, and did not seek to exercise, any discretionary authority in drafting the findings of fact. *See id.* at 16:12-20; 17:4-8.

15. In its written findings of fact, the Board determined that it lacked jurisdiction over WJ's appeal "because the application was not filed within the statutory time frame." *Id.* at 27:2-4. Whaley prepared the findings of fact between the March 31, 2009 hearing and April 22, 2009, on which date the findings of fact were signed by the Chairman of the Board. *Id.* at 34:3-25; *see also* Ex. F.

16. Whaley had no contact with Harmon during the pendency of the case. *Id.* at 35:1-9. This was by design. The County Counsel's office takes diligent measures to separate the members of its advisory section from the members of its litigation section. *Id.* at 40:8-15; *see also id.* at 40:20-41:11. The members of its advisory section work in a "doored-off" area of the County Counsel's office that consists of "four to five" office spaces. *Id.* at 17:23-18:5. By contrast, members of the litigation section work in a large open space. *Id.*

17. The files and records used by the advisory section in connection with the assistance it renders to the Board are stored in a locked filing cabinet protected by a security code only known to members of the advisory section. *Id.* at 40:20-25. Each of the files is protected by a cover sheet that "indicate[s] that the materials are subject to [an] ethical wall." *Id.* at 40:25-41:7.

18. Due to these procedural safeguards, as well as her own diligence in observing her office's ethical rules, Ms. Whaley had no formal or informal contact with Mr. Harmon during the pendency of the WJ appeal. Per office policy, Whaley did not "discuss[] the case with the applicant, or the assessor, or any of the other parties."

4

|   |   |   |
|---|---|---|
| 1 |  | *See id.* at 40:20-25; *see also id.* at 45:8-24.  Harmon testified that he underwent |
| 2 |  | standard training to "maintain an ethical wall" on cases he handled.  *Id.* at 67:2-11. |
| 3 | 19. | Nor was Ms. Whaley otherwise compelled to suggest to (or otherwise influence) |
| 4 |  | the Board to rule in a manner favorable to the Tax Assessor and unfavorable to |
| 5 |  | WJ.  Members of the advisory section, including Ms. Whaley, never represented |
| 6 |  | the Tax Assessor.  *Id.* at 41:20-42:4.  And members of the litigation section never |
| 7 |  | assisted the Board.  *Id.* |
| 8 | 20. | Moreover, Mr. Harmon played no direct or indirect role in Ms. Whaley's |
| 9 |  | professional review and/or advancement at the County Counsel's office at or |
| 10 |  | before the relevant time period.  *See id.* at 41:10-11; 42:5-6; 43:20-23.  Harmon |
| 11 |  | did not, for instance, determine Ms. Whaley's "compensation . . . progress and |
| 12 |  | advancement in the County Counsel's office."  *Id.* at 43:24-44:3.  There is simply |
| 13 |  | no evidence that he was ever in a position to influence Ms. Whaley's advice, if |
| 14 |  | any, to the Board. |
| 15 | 21. | Indeed, Mr. Harmon was entitled to no special treatment in connection with the |
| 16 |  | WJ case (or any other) as a result of his association with the County Counsel's |
| 17 |  | office.  For example, Whaley did not provide Harmon with an advance copy of the |
| 18 |  | Board's findings of fact.  *Id.* at 72:22-25; *see* Ex. 7.  Harmon did not even learn of |
| 19 |  | the decision until "either the filing of [the instant] action or the filing of [a parallel] |
| 20 |  | Superior Court action by the plaintiff."  *Id.* at 73:2-18. |
| 21 | 22. | The evidence also establishes that Harmon and Whaley rarely interact.  *Id.* at |
| 22 |  | 84:16-24.  The two attorneys worked together in June 2009 on an unrelated |
| 23 |  | litigation.  *Id.* at 84:11-14.  Harmon credibly testified that, as of March 31, 2009, |
| 24 |  | he had spoken with Whaley between 20 and 30 times, including conversations that |
| 25 |  | occurred well before the events giving rise to this lawsuit.  *Id.* at 84:21-85:5. |
| 26 |  | Despite the existence of a mutual professional respect between Harmon and |
| 27 |  | Whaley, there is no evidence of any shared loyalty that would have, in this case, |
| 28 |  | influenced Whaley's advice to the Board. |

23. Summary judgment has been entered against WJ on its allegation that Board violated the due process clause of the Constitution by requiring the payment of a fee prior to the issuance of written findings of fact. Summary judgment has also been entered against WJ on its allegation that the Board violated the due process clause of the Constitution by failing to observe formal rules of evidence during the February 2, 2009 and March 31, 2009 proceedings. WJ's claim is thus limited to the allegation that the Board deprived WJ of due process by receiving assistance from a member of the County Counsel's office despite that office's concurrent representation of the Tax Assessor in the very same proceeding.

**B.  Conclusions of Law**

1. WJ's first claim alleges a violation of section 1983. That statute holds liable every person who under color of law "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The operative complaint in this case alleges that the Board deprived WJ of its right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

2. WJ's second claim is redundant of its first. This second claim alleges the same violation of WJ's due process rights. The first and second claims will therefore be evaluated under the same legal framework.

3. Due process minimally requires "[a]n impartial decisionmaker." *Simard v. Board of Ed. of Town of Groton*, 473 F.2d 988, 993 (2d Cir. 1973). "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456 (1975) (internal citations omitted); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 59, 93 S.Ct. 80 (1972).

4. California Government Code § 31000.7 authorized the Board to receive assistance from Whaley in the same proceeding in which Harmon represented the Tax

|   |   |   |
|---|---|---|
| 1 |  | Assessor.  WJ claims that this statute is unconstitutional both "on its face" and "as |
| 2 |  | applied." |
| 3 | 5. | In order to prevail on its facial challenge to the constitutionality of section |
| 4 |  | 31000.7, WJ must prove that the statute is "unconstitutional in every conceivable |
| 5 |  | application."  *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, |
| 6 |  | 796, 104 S.Ct. 2118 (1984).  WJ argues that it is always unconstitutional for the |
| 7 |  | same law office to represent a litigant and assist the decision-maker in a quasi- |
| 8 |  | judicial proceeding, even where the law office serves the public, and the same |
| 9 |  | member of that office does not provide assistance to the litigant and the decision- |
| 10 |  | maker. |
| 11 | 6. | Contrary to WJ's argument, not every application of section 31000.7 offends |
| 12 |  | constitutional due process.  The few courts to have addressed analogous situations |
| 13 |  | have been state courts and those courts have almost unanimously concluded that a |
| 14 |  | public law office's dual representation of a party and the decision-maker does not |
| 15 |  | run afoul of constitutional due process.  *See, e.g.*, *Howitt v. Superior Court*, 3 Cal. |
| 16 |  | App. 4th 1575, 1578 (1992); *Krupinski v. Vocational Technical School, Eastern* |
| 17 |  | *Northampton County*, 544 Pa. 58 (1996).  Even if the *same* individual represents a |
| 18 |  | party and the decision-maker, constitutional due process may not be irredeemably |
| 19 |  | undermined.  *Cf. Sterling Shoe Co. v. Norberg*, 411 F. Supp. 128, 132 (D.R.I. |
| 20 |  | 1976) (applying *Withrow* and rejecting claim that due process was violated when |
| 21 |  | same individuals participated in investigative and adjudicative phases of appeal |
| 22 |  | from tax assessment).  There is no authority for the proposition that the |
| 23 |  | constitution necessarily prevents the same public law office from providing |
| 24 |  | assistance to the decision-maker while representing one of the parties, especially |
| 25 |  | where efforts are made to erect and observe a meaningful ethical wall.  Not every |
| 26 |  | dual representation calls into question the decision-maker's impartiality.  WJ's |
| 27 |  | facial challenge to the state statute accordingly fails. |
| 28 | 7. | WJ also raises an "as applied" challenge to Section 31000.7.  It argues that the |

7

1 specific circumstance surrounding Whaley's assistance to the Board and Harmon's
2 representation of the Tax Assessor undermined the impartiality of the proceedings.
3 8. "An as-applied challenge contends that the law is unconstitutional" as applied to
4 the particular conduct or facts at issue. *See Foti v. City of Menlo Park*, 146 F.3d
5 629, 635 (9th Cir. 1998). WJ appears to argue that Whaley's relationship with
6 Harmon, whether personally or as a result of their common employer, affected her
7 advice to the Board, thereby depriving WJ of an impartial decision-maker. The
8 facts do not support this allegation.
9 9. First, the facts do not show that Whaley was subject to any undue influence as a
10 result of her association with Harmon. Whaley, the records she used, and other
11 members of her section were formally screened from Harmon and other members
12 of the litigation section at all times during the pendency of the appeal before the
13 Board. The requirements of this ethical wall were observed by both Harmon and
14 Whaley, who did not interact in any manner during the appeal before the Board.
15 In addition, Harmon exercised no indirect influence over Whaley (or vice versa),
16 either in the form of control over career advancement, determinations about
17 compensation, or any other form of personal influence that could affect Whaley's
18 advice to the Board. The mere existence of a mutual respect, if any, between the
19 two individuals does not give rise to an inference of impartiality by the Board.
20 10. Second, even if Whaley was unduly influenced by her relationship with Harmon,
21 there is no evidence that this influence ultimately deprived WJ of an impartial
22 decision-maker. In short, Whaley *was not* the decision-maker, and was never
23 asked to participate in the decision-making process. Whaley did not analyze the
24 facts for the Board; she merely drafted the decision reached by the Board.
25 //
26 //
27 //
28 //

**C. Disposition**

The preponderance of the evidence does not establish that the Board deprived WJ of its rights under the United States Constitution. Judgment is therefore entered against WJ on its claims against the Board. The WJ shall bear the Board's costs. A proposed Judgment shall be submitted on or before January 28, 2011.

IT IS SO ORDERED.

DATED: January 24, 2011

_____
DAVID O. CARTER
United States District Judge